S

# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | **JUDGE RICHARD L. SPEER** |
| James Edward Boday | ) | |
| and | ) | Case No. 07-3107 |
| Debra Ann Boday | ) | |
| | ) | (Related Case: 02-31968) |
| Debtor(s) | ) | |
| | ) | |
| James Edward Boday, et al. | ) | |
| | ) | |
| Plaintiff(s) | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Franklin Credit Management Corporation | ) | |
| | ) | |
| Defendant(s) | ) | |

## <u>DECISION AND ORDER</u>

Before this Court is the Complaint of the Debtors/Plaintiffs for Violation of Discharge Order, Confirmation Order and Automatic Stay. At a PreTrial conference held on the Complaint, the Parties agreed to submit this controversy to the Court for resolution based solely on the written briefs of the Parties. The Court is now in receipt of the Parties' respective briefs, and after having had the opportunity to review the arguments of the Parties, as well as the accompanying exhibits, finds that, insofar as it concerns the Defendant's liability, the Debtors' Complaint has merit.

**James Edward Boday, et al. v. Franklin Credit Management Corp.**
**Case No. 07-3107**

## FACTS

On October 25, 1999, the Debtors, James and Debra Boday, obtained a loan from Bank One, NA in the amount of $155,125.00. In return, the Debtors executed a promissory note, under which they were obligated to pay Bank One $1,307.90 per month. Of this amount, $1,188.30 constituted accruing interest; the remainder was allocated to reduce the principal of the loan. The note executed by the Debtors contained the following language:

> The principal of and interest on this Note shall be due and payable in 179 equal monthly installments in the amount of $1,307.90 each . . . . The amount of each of the foregoing scheduled payments includes principal and interest. . . . . Unless otherwise agreed or required by applicable law, payments will be applied first to accrued unpaid interest, then to principal, and any remaining amount to any unpaid collection costs and late charges.

The Debtors' residence, as evidenced by a mortgage executed on the same date as the promissory note, operated as collateral for the loan.

At some point after executing the promissory note, the Debtors became delinquent on their obligation to Bank One. While their obligation with Bank One was in arrears, the Debtors filed a petition in this Court for relief under Chapter 13 of the United States Bankruptcy Code. At the time of their bankruptcy filing, the Debtors' arrearage to Bank One totaled $17,227.70. For this arrearage, Bank One filed a proof of claim. Thereafter, Bank One transferred its claim to the Defendant, Franklin Credit Management Corporation.

On July 3, 2002, the Debtors' proposed plan of reorganization was confirmed by the Court. This plan provided for the repayment of the prepetition arrearage claim filed by Bank One. The plan further provided that upon successful completion of the plan, (1) all defaults would be deemed to be fully cured, (2) creditors holding mortgages were required to adjust their records to indicate that

Page 2

all arrearages had been paid, (3) any balance due on a mortgage loan had to be adjusted so as to reflect the balance due in the original amortization schedule, and (4) that any amounts owed in excess of said amortization schedule were deemed to be discharged. (Doc. No. 25, at pg. 2).

During the course of their Chapter 13 case, the Debtors made payments on their mortgage debt in the amount set by contract, $1,307.90. At some point, however, the Debtor became delinquent in their postpetition payments on Bank One's claim. An agreed order was subsequently entered resolving the delinquency. Under the agreed order, the Debtors agreed to pay their postpetition arrearage, totaling $10,963.20, in six equal monthly installments of $1,827.20. The Debtors were subsequently successful in complying with their requirements under this agreed order.

On May 5, 2006, the Debtors completed their Chapter 13 Plan of reorganization. An order of discharge was entered by the Court shortly thereafter. The Debtors then requested and obtained from the Defendant a printout of their loan amortization, dating from September of 2004 to February of 2008. Throughout this period, the principal balance on Debtors' loan remained constant, at $154,718.85.

## DISCUSSION

Before this Court is the Plaintiffs/Debtors' Complaint for Violation of Discharge Order, Confirmation Order and Automatic Stay. In their Complaint, the Debtors request the Court make a determination as to the amount due under its loan to the Defendant, and request that the Court award them damages, including attorney fees and punitive damages, for the Defendant's failure to properly calculate the principal balance of their loan. (Doc. No. 1). Pursuant to 28 U.S.C. § 157(b)(2)(G)/(L)/(O), this matter is a core proceeding over which this Court has the jurisdictional authority to enter final orders and judgments.

Page 3

**James Edward Boday, et al. v. Franklin Credit Management Corp.**
**Case No. 07-3107**

The Debtors in this matter sought relief under Chapter 13 of the United States Bankruptcy Code. Chapter 13 allows a financially distressed individual to reorganize their financial affairs under the protections of the bankruptcy court. The reorganization process is accomplished through the debtor proposing a plan of reorganization. 11 U.S.C. § 1321. Funding for the plan comes from the debtor's future income. 11 U.S.C. § 1322(a).

Once proposed, the debtor's plan of reorganization, if it is found to comply with the requirements of the Bankruptcy Code, will be confirmed by the court. 11 U.S.C. § 1325. A plan confirmed by the court then binds the debtor and each creditor to its terms, notwithstanding a creditor's opposition to the plan. 11 U.S.C. § 1327(a). At the completion of a Chapter 13 plan of reorganization, the debtor is entitled to the entry of an order of discharge. 11 U.S.C. § 1328(a).

In proposing a plan of reorganization, a debtor may, but is not required to "provide for the curing of any defaults." 11 U.S.C. § 1322(b)(5). The term "curing," as used in § 1322(b)(5), provides a debtor with the right to remedy a default and restore matters to the status quo. Put differently, a plan provision to cure a default will operate to nullify the consequences of the events which had triggered the default. *Frazer v. Drummond (In re Frazer)*, 377 B.R. 621, 630 (9th Cir. B.A.P. 2007). The Debtors' Complaint for Violation of Discharge Order, Confirmation Order and Automatic Stay is premised on the Defendant's failure to properly account for the curing of their mortgage arrearage.

When a mortgage is in arrears, it is a common practice in the industry of crediting payments received to the oldest outstanding installment due. This is usually accomplished through an automated system. Under this type of accounting procedure, an account-debtor must pay an arrearage claim in full, including any attendant fees and penalties, before a reduction in a loan's principal will be calculated. John Rao, *Fresh Look at Curing Mortgage Defaults in Chapter 13*, 27 Am. Bankr.Inst. J. 14 (Feb.2008). Authority to utilize this accounting procedure is normally based on contract, with it being the Defendant's position that its agreement with the Debtors similarly afforded

Page 4

it the right to suspend reducing the principal owed on its loan with the Debtors until its arrearage claim was fully satisfied.

As authority for its position, the Defendant pointed to that portion of the Parties' agreement which provided that "payments will be applied first to accrued unpaid interest, then to principal, and any remaining amount to any unpaid collection costs and late charges." The Defendant termed this type of provision a "simple interest loan." To this end, the Defendant maintains that the controversy between the Parties "has been, and remains to be, an interpretation of the terms of the loan." (Doc. No. 26, at pg. 3). And, as a matter of interpretation, the Defendant set forth that the principal balance of the Debtors' obligation never decreased over the course of their Chapter 13 plan because, as a simple interest loan, outstanding interest "need[ed] to be paid in full before the principal balance will decrease once again." (Doc. No. 26, at pg. 1-2).

The contractual rights of parties are in many instances enforced in bankruptcy. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). However, this enforcement will not stand when it directly contravenes bankruptcy law. *Id*. The Debtors' position is derived from this tenet.

In their arguments to the Court, the Debtors relied heavily on the Supreme Court's decision of *Rake v. Wade* as authority for their position that, under bankruptcy law, the Defendant improperly applied their mortgage payments by not recognizing a reduction in the loan's principal. 508 U.S. 464, 473, 113 S.Ct. 2187, 2192, 124 L.Ed.2d 424 (1993). In *Rake v. Wade*, the Court observed that the "cure" provision of § 1322(b)(5) operates so as to split a creditor's "secured claims into two separate claims-the underlying debt and the arrearages." 508 U.S. at 473, 113 S.Ct. at 2192. Although a

Page 5

principal holding of *Rake v. Wade* was abrogated by subsequent legislation,[1] this observation regarding the splitting of claim's remains intact. *Cohen v. Lopez (In re Lopez)*, 372 B.R. 40 (9th Cir. B.A.P. 2007). In this way, the Debtors put forth that the Defendant failed to abide by this principle by not properly treating their mortgage arrearage as a distinct claim, thereby "resulting in a distribution of payments that is contrary to the binding effect" of their plan. (Doc. No. 25). Instead, the Debtors put forth that the funds paid into their Chapter 13 plan were improperly treated as an "unapplied balance" leading to the Defendant ultimately "charging unauthorized interest and fees, including post petition attorney fees or bankruptcy fees, on the mortgage account." *Id*. The Debtors' position, as now explained, has merit.

Section 1322(b)(5), by splitting a claim, means that a creditor is no longer permitted to allocate payments according to the terms of its contract. Instead, its effect is to require that any prepetition arrearage claim must be paid separately, according to the terms of the debtor's confirmed plan, based upon the creditor's allowed claim. The remaining debt, consisting of those payments which become due after the petition is filed, is then paid according to the terms of the parties' contract and original loan amortization as if no default ever existed. 11 U.S.C. § 1325(a)(5)(B). *See also In re Lewis,* 170 B.R. 861, 865 (Bankr. D.Md. 1994) (in a Chapter 13 plan, payments of principal and interest on the underlying debt are maintained according to the terms of the mortgage documents as if there were no default).

From an accounting standpoint, this requires that a creditor allocate a debtor's loan payments in the following manner: First, the creditor must apply the arrearage payments it receives during the

---

[1]

In *Rake v. Wade*, the Supreme Court held that bankruptcy law requires that, under a Chapter 13 plan, interest must be paid on mortgage arrearages. The enactment of § 1322(e), overrules this holding by prescribing that if a plan proposes to cure a default, "the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law."

Page 6

plan's duration in accordance with the terms of the plan, so that upon completion of the plan the debtor is deemed current on the prepetition amortization schedule. Accord 8 Collier on Bankruptcy ¶ 1329.09[3] (15th ed. rev. 2005). Second, payments received from the debtor to service those payments which contractually accrue postpetition, must be allocated according to the terms of the parties' contract as if no default had occurred. *In re Wines*, 239 B.R. 703 (Bankr. D. N.J. 1999). Creditors who adopt accounting procedures contrary to this method can be held liable for damages suffered by the debtor. *In re Nosek*, 363 B.R. 643 (Bankr. D. Mass. 2007).

In this case, the evidence shows that throughout the course of their Chapter 13 plan of reorganization, the Debtors paid the prepetition arrearage which had accrued on their mortgage debt. In addition, the Debtors regularly paid the contractual amount due on their loan. This amount, totaling $1,307.90 per month, consisted of $1,188.30 in interest, with the remaining $119.60 allocated to a reduction in the loan's principal.

Simple math would, thus, require that when the Debtors made their contractually required payment of $1,307.90 per month, a corresponding $119.60 reduction to the loan's principal should have occurred. However, the amortization printout obtained by the Debtors for their loan with the Defendant instead shows that, during the course of their Chapter 13 plan, the principal balance on the loan remained constant, at $154,718.85. There is only way to explain this: the accounting procedure utilized by the Defendant, during the course of the Debtors' Chapter 13 plan, wrongly applied the Debtors' contractual payment of $1,307.90 per month payment to prepetition interest and other charges which continued to accrue under the Parties' contract. Resultantly, the Defendant continued to wrongly credit the payments it received from the Debtors to the oldest outstanding installment due, and thus the Debtors' account with the Defendant was never brought current as is required when a "cure" is effectuated under § 1322(b)(5).

Page 7

Not only does this accounting fail to adequately take into consideration that the "cure" provision of § 1322(b)(5) operates so as to split a creditor's secured claim into two separate claims – the underlying debt and the prepetition arrearage – the Defendant's accounting is violative of other aspects of bankruptcy law. First, it goes contrary to the binding effect of the Debtors' confirmed plan of reorganization, whose terms, among other things, provided that the Defendant was required to adjust its record so as to indicate that all arrearages had been paid, and that the amount due should correspond to the Parties' original amortization schedule. Second, to the extent that the Defendant seeks to collect from the Debtors, as a personal liability, funds for which it has not properly accounted, the Defendant is in violation of this Court's order of discharge. 11 U.S.C. §§ 524 & 1328.

To be sure, at one point during the progression of their plan, the Debtors defaulted on their postpetition obligation with the Defendant. And while the Debtors were in default, no reduction in the loan's principal would have occurred. Similarly, during the Debtors' default, the Defendant would have been within its legal right to assess the Debtors for accruing interest and other contractually permissible default charges. However, such matters are moot at this point as the Debtors' default was subsequently resolved through an agreed order entered by the Court, the terms of which the Debtors were able to fulfill. This order, like with the order of confirmation, was binding on the Defendant. 28 U.S.C. § 157(b)(1).

Accordingly, for these reasons, the Court holds that, per the Debtors' complaint, the Defendant improperly accounted for those payments the Debtors made to service the mortgage loan now held by the Defendant. As such, the Defendant will be required to adjust its records so as to reflect the amount owed by the Debtors under the original amortization schedule. The Defendant will also be required to void any postpetition fees, legal or otherwise, assessed to the Debtors based upon their account being in arrears. Finally, concerning the issue of damages, the Court, having no evidence before it, finds that a further pretrial should be scheduled to address this issue.

Page 8

**James Edward Boday, et al. v. Franklin Credit Management Corp.**
**Case No. 07-3107**

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

***ORDERED*** that the Defendant, Franklin Credit Management Corporation, adjust its records so as to reflect that the Debtors' loan balance corresponds to the original amortization schedule.

***IT IS FURTHER ORDERED*** that the Defendant void any postpetition fees, legal or otherwise, assessed to the Debtors based upon their account being in arrears.

***IT IS FURTHER ORDERED*** that, within 21 days from the entry of this Order, the Defendant shall be required to provide the Debtors with an accounting of their adjusted loan balance.

***IT IS FURTHER ORDERED*** that so as to address the issue of damages, a continued PreTrial is hereby set in this matter for Thursday, October 23, 2008, at 12:30 P.M., in Courtroom No. 1, Room 119, United States Courthouse, 1716 Spielbusch Avenue, Toledo, Ohio.

Dated: October 2, 2008

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 9

This is to certify that a copy of the foregoing Decision and Order has been sent this 2nd day of October 2008 by ordinary US Mail service to the following:

D. Anthony Sottile
Reisenfeld & Associates
2035 Reading Rd.
Cincinnati, OH 45202

Franklin Credit Management Corporation
101 Hudson Street 25th Floor
Jersey City, NJ 07302

Randy Lee Reeves
973 W North St
Lima, OH 45805

James Edward Boday
25212 Allen Union Wayne Rd
Waynesfield, OH 45896

Debra Ann Boday
25212 Allen Union Wayne Rd
Waynesfield, OH 45896

_____
Deputy Clerk